KENNETH MARSHALL & COMPANY, A NEW JERSEY COR-
PORATION, APPELLANT, v. THE STATE OF NEW JER-
SEY, BUREAU OF SECURITIES, GEORGE F. KUGLER,
JR., ATTORNEY GENERAL OF THE STATE OF NEW
JERSEY, AND JOSEPH F. KRUPSKY, CHIEF, BUREAU
OF SECURITIES, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted June 13, 1972—Decided June 28, 1972.

Before Judges LABRECQUE, KOLOVSKY and ALLCORN.

*Mr. John B. M. Frohling,* attorney for appellant (*Messrs. Donald P. Sharkey and Charles H. Brandl,* on the brief).

*Mr. George F. Kugler, Jr.,* Attorney General, attorney for respondents (*Mr. Charles R. Parker,* Deputy Attorney General, of counsel and on the brief).

PER CURIAM. In February 1970 appellant filed a verified application with the Bureau of Securities seeking registration as a broker-dealer pursuant to *N. J. S. A.* 49:3-57, a section of the Uniform Securities Law (1967), *N. J. S. A.* 49:3-47, *et seq.*

The application form called for an answer to the following question:

13. Will the applicant in the course of its business have custody of client's funds or securities?

Appellant's answer was "Yes," an answer which under the Bureau's regulation 13:13-3 mandated that its net capital be at least $25,000. Appellant's answer to question 15 indicated that the rule requirement was satisfied — its net capital was given as $36,496.45.

In view of the information set forth in the application, the Bureau had no objection thereto and the registration became effective.

However, appellant's compliance with the minimum capital requirement was short-lived. By July 10, 1970 its capital was reduced to $1970 (if the testimony given by the Bureau's investigator is accepted) or to $5100 (if appellant's calculations are correct). Appellant thereafter obtained additional capital so that its capital, as of the end of the months September 1970 to February 1971, inclusive, varied from a high of $15,927 to a low of $9766.15. In March 1971, $25,000 additional capital was put into the company so that its capital as of March 31, 1971 was $34,971.66.

The Bureau of Securities did not learn of the depletion in appellant's capital until appellant, in response to the Bureau's reminder notice of April 6, 1971 that its annual certified report of financial condition was due, submitted a report as of July 10, 1970. Investigation by the Bureau followed and resulted in the service on appellant of notice dated April 29, 1971 that its registration as a broker-dealer was "proposed to be revoked." At the same time appellant was served with a "notice of preliminary findings and opportunity for a hearing." Appellant requested a hearing. The hearing was held before the chief of the Bureau.

The chief thereafter filed his "findings of fact and conclusions of law" in which, after rejecting several preliminary motions made by appellant and setting forth his findings, he concluded:

The undersigned finds and concludes that Respondent on several and frequent occasions in 1970 and 1971 failed to maintain the minimum capital of $25,000. which was required by Regulation 13:13–3 and which was promulgated pursuant to *N. J. S. A.* 49:3–57(e), and as a consequence Respondent violated *N. J. S. A.* 49:3–58(a) (2) (ii).

The undersigned holds that when a broker-dealer receives from the Sovereign a privilege and opportunity of custody of other peoples money and property, and where in connection therewith that broker-dealer exercises albeit restrictedly said privilege, and where that broker-dealer on several and frequent occasions violates the minimum capital requirement for the custodial class in which the broker-dealer is situate, that broker-dealer has engaged in a "course of business which . . . would operate as a . . . deceit upon any person" within the spirit and meaning of *N. J. S. A.* 49:3–52(c).

The undersigned finds and concludes that Respondent violated *N. J. S. A.* 49:3–52(c).

An appropriate Order of Suspension of the registration of Respondent as a broker-dealer for seventy-five (75) consecutive calendar days shall be entered herewith.

Appellant appealed to this court and, at the same time, applied to the chief of the Bureau for, and obtained, a stay of the 75-day suspension pending determination of the appeal.

■ Appellant argues that "there are no bases in the statute for a rule requiring a broker-dealer to have more than 100,000 minimum capital." We disagree.

In addition to the general power to adopt rules and regulations set out in *N. J. S. A.* 49:3–67, the statute contains two provisions, *N. J. S. A.* 49:3–57(d) and (e), granting the chief of the Bureau of Securities power to adopt rules requiring a minimum capital for registered broker-dealers. In our view, authority to adopt Regulation 1313–3 which provides:

No registration as a broker-dealer shall be issued to an applicant having custody of clients' funds or securities unless such applicant has a minimum capital of $25,000 or has posted with the Bureau of Securities a surety bond in the amount of $25,000,

is granted by *N. J. S. A.* 49:3–57(e). The $10,000 limitation found in *N. J. S. A.* 49:3–57(d) to which appellant refers applies only to broker-dealers who do not propose to have "custody of clients' funds or securities."

Since the registration statement as filed by appellant and accepted by the Bureau authorized appellant to have "custody of clients' funds or securities," it was incumbent upon it to maintain a minimum capital of $25,000, as long as the authorization so granted to it continued to exist. *In re Ridgway,* 116 *N. J. Super.* 172 (App. Div. 1971). (It may be noted that the fact that a broker-dealer has such minimum capital is the statutory justification for not requiring it to file a surety bond in the same minimum amount under *N. J. S. A.* 49:3–57(e).)

It is therefore irrelevant, even if true, (1) that defendant's answer to question 13 was, as it contends, inadvertently given as "Yes," because it did not understand the question—which we note is not at all ambiguous—and (2) that, as appellant also contends, the instances in which it had kept a customer's securities or credit balance were in "special circumstances * * * beyond its control, instances not fairly to be classified as involving 'custody of clients' funds or securities.' "

The record contains substantial credible evidence to support the Bureau chief's findings that the proofs warranted his exercising the power granted him by *N. J. S. A.* 49:3–58(a) to suspend appellant's registration because "the order [of suspension] is in the public interest" and because appellant had "wilfully violated [and] wilfully failed to comply with" the regulation above discussed, and had engaged in a "course of business which * * * would operate as a * * * deceit, upon any person." *N. J. S. A.* 49:3–52(c).

[T]he term "willfully" does not require proof of evil motive, or intent to violate the law, or knowledge that the law was being violated. All that is required is proof that the violator acted intentionally in the sense that he was aware of what he was doing. [*State v. Russell*, 119 *N. J. Super.* 344 1972.].

Finally, in the circumstances revealed by the record in this case, we conclude that appellant has failed to demonstrate that the 75-day suspension was arbitrary, capricious or unreasonable.

The order of the Bureau of Securities is affirmed.